O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br>     v.<br>ONE 2006 MERCEDES-BENZ R350,<br><br>            Defendant. | Case No. 2:12-cv-07651-ODW (JEMx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [13]** |

## I.   INTRODUCTION

Plaintiff United States of America ("the Government") filed a Complaint for Civil Forfeiture against Defendant One 2006 Mercedes-Benz R350. The Government alleges that Defendant was acquired with funds traceable to wire fraud and money laundering and is therefore forfeitable to the United States. The Government effected service by publication and sent direct notice to known potential claimants. No one filed a claim to the Defendant automobile, and the Clerk of Court entered default. For the reasons addressed below, the Court **GRANTS** the Government's Motion for Default Judgment.[1]

///

///

---

[1] Having carefully considered the papers filed in support of this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

Rocco Cuccia was the former Buyer and Manager of Material Business Systems for Lionsgate Entertainment's Home Entertainment Department. The Government alleges that Cuccia concocted a scheme through which he embezzled hundreds of thousands of dollars from Lionsgate in association with Larry Collins. (Compl. ¶¶ 11–13.) Collins owns Versagraphic Design Group and Versastack Merchandising, third-party vendors of Lionsgate. (*Id.* ¶ 14.)

As part of his duties at Lionsgate, Cuccia had to find suppliers of corrugated cardboard displays. (*Id.* ¶ 11.) Lionsgate uses these displays to present DVDs for sale. (*Id.* ¶ 11.) Versagraphic (now Versagraphix) and Verstastack both provided these displays to Lionsgate. (*Id.* ¶ 14.) Cuccia allegedly "padded" already-approved purchase orders from Lionsgate to these companies by increasing the quantities ordered and by creating entirely new, but fraudulent, purchase orders. (*Id.* ¶¶ 15–16.)

Cuccia and Collins allegedly employed another company, Jefferson Factors, Inc., to facilitate payment of the invoices between Lionsgate and Collins's companies. (*Id.* ¶ 17.) Jefferson received payment for the padded purchase orders and would then send that amount, less Jefferson's fee, to Collins. (*Id.* ¶¶ 18–19.) Collins apparently then forwarded a percentage to Cuccia. (*See id.* ¶ 22.)

In January 2011, Lionsgate conducted an internal audit and unearthed the scheme. (*Id.* ¶ 21.) Lionsgate asserted that Cuccia lacked authority to enter into these contracts with Collins's companies on Lionsgate's behalf. (*Id.* ¶ 20.)

On August 9, 2010, Cuccia's Citibank account balance was just shy of $10,000. But through September 17, 2010, he received $111,000 via four wire transfers that IRS Special Agents traced from Jefferson to Collins to Cuccia. (*Id.* ¶¶ 25–35.) On September 15, 2010, Cuccia wrote a check payable to Mercedes-Benz of Long Beach, drawn on the Citibank account, for $29,595.00, the price of the Defendant Merecedes-Benz. Cuccia purchased the Defendant Mercedes-Benz for his former girlfriend, Laura Adriana Moreno. (*Id.* ¶ 41.)

1       In an interview with IRS Special Agents, Collins admitted sending the money to Cuccia, though Collins claimed the money was for "personal loans and consulting fees." (*Id.* ¶ 22.)

      Cuccia admitted increasing the quantities on the purchase orders. (*Id.* ¶ 23.) He also conceded that he received over $500,000 from Collins's companies via wire transfers. (*Id.*)

      On September 6, 2012, the Government filed a civil-forfeiture Complaint against Defendant. The Government alleges that Defendant was purchased with funds derived from wire fraud under 18 U.S.C. § 1343 and money laundering under 18 U.S.C. § 1957. (*Id.* ¶ 7.) The Government contends that Defendant is accordingly subject to civil forfeiture under both 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C). (*Id.*)

      Also on September 6, a warrant authorizing the United States Marshals Service to seize Defendant issued. (Parham Decl. Ex. A.) On September 17, 2012, Treasury Department agents executed the warrant and seized Defendant. (*Id.*)

      Beginning on October 2, 2012, a Notice of Civil Forfeiture was published for 30 consecutive days on the Government's forfeiture website, http://www.forfeiture.gov. (Reyes Decl.)

      The United States Attorney's Office sent notice of the Verified Complaint for Civil Forfeiture via Certified Mail to Rocco Cuccia at his last-known address in Downey, California. (Parham Decl. Ex. C.) The letter was signed for on the following day. (*Id.*)

      Notice was sent the same day to Moreno at two addresses in Downey, California. (Parham Decl. Exs. D, E.) One letter was signed for on October 23, 2012, and the other was returned as undeliverable. (*Id.*; Parham Decl. ¶ 7.)

      The United States Attorney's Office also sent notice to Lionsgate at its Santa Monica, California address. (Parham Decl. Ex. F.) A return receipt was signed on October 23, 2012. (*Id.*)

/ / /

To date, no one has filed a claim with the Court. On February 7, 2013, the Clerk of Court entered default against the interests of Cuccia, Moreno, Lionsgate, and all other potential claimants. (ECF No. 10.) On February 14, 2013, the Government moved for default judgment. (ECF No. 13.) That Motion is now before the Court for decision.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter default judgment following the Clerk's entry of default under Rule 55(a). Local Rule C.5 provides that, for in rem proceedings, default may only be entered after the required notice has been given, the time for answer has expired, and no one has appeared to claim the property. Default judgment may be entered under Rule 55(b) any time after the Clerk has entered default. C.D. Cal. L.R. C.5.

The district court has discretion whether to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

But in exercising its discretion, a court must consider several factors, including (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### IV. DISCUSSION

The Government argues that Defendant is subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) because Cuccia purchased Defendant with

the fruits of his wire-fraud and money-laundering scheme.  The Court considers the allegations in the Complaint, the Government's entitlement to forfeiture, and potential claimants' interests in turn.

**A.     Merits of the Complaint**

The Government contends that the evidence set forth in the Complaint establishes that Cuccia conspired with Collins to commit wire fraud and money laundering and that Cuccia purchased Defendant with funds derived from those illegal activities.

A wire-fraud conviction under 18 U.S.C. § 1343 requires the Government to prove three elements: "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deceive or defraud." *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010) (internal quotation marks omitted).  A "scheme to defraud" is defined as an affirmative, material misrepresentation. *Id.*

Taking the allegations in the Complaint as true,[2] the Court finds that the Government's Complaint establishes the three elements of wire fraud.  By Cuccia "padding" Lionsgate's purchase orders and then siphoning off the extra cash, Cuccia misrepresented to Lionsgate the number of cardboard displays it actually ordered and would receive.  Cuccia and Collins employed Jefferson as a payment conduit, with Cuccia receiving a total of $502,435 via 43 wire transfers.  Those transfers readily satisfy the use-of-the-wires element.  Cuccia manifested his specific intent to defraud Lionsgate by increasing the purchase-order quantities, entering into a contract with Collins and Jefferson, and then reaping the illicit harvest to the tune of over half a million dollars.

A money-laundering conviction under 18 U.S.C. § 1957 requires the government to show: "(1) the defendant knowingly engaged in a monetary transaction; (2) he knew the transaction involved criminal property; (3) the property's

---

[2] The Court is mindful that there is an active criminal case against Cuccia and Collins.  While the Court must accept the allegations in the Complaint as true in deciding this Motion, the Court expresses no opinion on the allegations contained in the indictment.

value exceeded $10,000; and (4) the property was derived from a specified unlawful activity." *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003); *see also* 18 U.S.C. § 1957. Wire fraud under § 1343 is a "specified unlawful activity." 18 U.S.C. §§ 1957(f)(2), 1956(c)(7)(A), 1961(1).

The Court likewise finds that the allegations in the Complaint suffice to establish the elements of engaging in a monetary transaction with criminally derived property under § 1957. Cuccia paid almost triple the $10,000 threshold required by the statute when he purchased Defendant. The check he used was drawn on an account that contained only $10,000 before the allegedly unlawful transfers occurred. It was only after Cuccia received some $111,000 via wire transfers between August 10, 2010, and September 17, 2010, that his account balance was sufficient to cover Defendant's purchase price.

Cuccia further admitted receiving over $500,000 from Collins's companies and acknowledged he entered into a contract with Versagraphics purportedly on behalf of Lionsgate. His knowledge of his participation in the wire-fraud scheme—a specified unlawful activity—establishes § 1957's knowledge element.

**B.    Entitlement to Forfeiture**

Property involved in a transaction that violates § 1957, or traceable to such property, is subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A). Any property derived from property traceable to a "specified unlawful activity" is similarly forfeitable under § 981(a)(1)(C).

The Court finds that Defendant is forfeitable to the Government on the grounds that it was purchased with funds traceable to violations of both § 1343 and § 1957. But for the allegedly illicit wire transfers, Cuccia's bank account balance would have been insufficient to cover Defendant's purchase price. At least two-thirds of the approximately $30,000 purchase price had to have come from criminally derived funds. Defendant is traceable to funds linked to wire-fraud and money-laundering

/ / /

violations and therefore forfeitable to the Government. 18 U.S.C. §§ 981(a)(1)(A), (C).

## C. Notice to Potential Claimants

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions dictate the notice required in civil-forfeiture cases. Supplemental Rule G(4) requires that the Government effect notice via publication and that the Government send direct notice to known potential claimants.

If the Government elects to post notice on an official internet government forfeiture site, the notice must be posted for at least 30 consecutive days. Supp. R. G(4)(a)(iv)(C). The notice must "(A) describe the property with reasonable particularity; (B) state the times under Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with the claim and answer." Supp. R. G(4)(a)(ii). Known potential claimants must receive both notice and a copy of the complaint. Supp. R. G(4)(b)(i). Unless the court sets a different time for good cause, all claims must be filed within 60 days after the first day of publication on the government forfeiture website. Supp. R. G(5)(a)(ii)(B).

Here, the Government filed a Declaration of Publication executed on November 1, 2012, establishing that a civil-forfeiture notice was posted on www.forfeiture.gov for 30 consecutive days beginning on October 2, 2012. A copy of the notice published online is included with the Declaration. The notice describes Defendant by its year, make, model, vehicle identification number, and seizure location. It also states that any claim must be filed "within 60 days from the first day of publication (October 02, 2012) of this Notice." (Reyes Decl.) Finally, the notice names "Assistant United States Attorney Geg [*sic*] Parham" as the attorney upon whom a claim should be served. (*Id.*) Though Parham's first name is misspelled, it seems highly unlikely that such a negligible error would thwart service of a potential claimant's notice. The Court therefore finds that the Government properly effected notice by publication under Supplemental Rule G(4)(a).

Since the Government knew of potential claimants, it was also required to send direct notice to those individuals under Supplement Rule G(4)(b). The Government submitted copies of the letters it sent via Certified Mail to Cuccia, Moreno, and Lionsgate. Each letter states that a copy of the Verified Complaint for Forfeiture is enclosed with it.

The Government received signed return receipts from all three potential claimants.[3] The deadline for claims was 60 days after October 2, 2012, or December 1, 2012. As of the date of this Order, no claims have been filed with the Court. There is further no indication that either Cuccia, Moreno, or Lionsgate are minors, incompetents, or active servicemembers. *See* Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 521. The Court therefore finds that the Government properly served all known potential claimants, and the time for filing of a claim has lapsed.

## V. CONCLUSION

For the reasons discussed above, the Government's Motion for Default Judgment is **GRANTED**. A judgment will issue.

**IT IS SO ORDERED.**

March 7, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[3] The return receipt for the letter sent to Cuccia was signed by "Laura Moreno." (Parham Decl. Ex. C.) But the Complaint establishes that Cuccia and Moreno live together. (Compl. ¶ 41(a).)